UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MUJO KOVAC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:19 CV 164 ACL |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Mujo Kovac brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Kovac's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

## I. Procedural History

Kovac filed his applications for benefits on January 4, 2016, claiming that he became unable to work on July 18, 2015. (Tr. 161-73.) In his Disability Report, Kovac alleged disability due to nervousness, panic attacks, ulcers, stomach pain, post-traumatic stress disorder ("PTSD"), a heart condition, and depression. (Tr. 195.) Kovac was 52 years of age on his alleged onset of disability date. (Tr. 161.) His applications were denied initially. (Tr. 83-88.) Kovac's claim was denied by an ALJ on August 1, 2018. (Tr. 14-34.) On December 4, 2018, the Appeals Council denied Kovac's claim for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Kovac argues that the "ALJ's RFC is not supported by substantial evidence." (Doc. 21 at p. 3.)

## II. The ALJ's Determination

The ALJ first found that Kovac meets the insured status requirements of the Social Security Act through December 31, 2020. (Tr. 16.) Kovac had not engaged in substantial gainful activity since July 18, 2015, his alleged onset of disability date. *Id.* The ALJ next found that Kovac had the following severe impairments: major depressive disorder, alternately diagnosed as persistent depressive disorder with pure dysthymic syndrome; anxiety disorder; and PTSD. *Id.* The ALJ found that Kovac did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 20.)

As to Kovac's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned

> finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: his work is limited to simple, routine, and repetitive tasks; his work should be in a low-stress job, defined as having only occasional changes in the work setting; his work should not be in a fast-paced production job, but work can be completed by the end of the workday; should have only occasional interaction with the public; and should have only occasional interaction with coworkers and supervisors.

(Tr. 23.) The ALJ found that Kovac was capable of performing past relevant work as a spray-painting machine operator. (Tr. 33.)

The ALJ therefore concluded that Kovac was not under a disability, as defined in the Social Security Act, from July 18, 2015, through the date of the decision. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on November 23, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on November 23, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 33-34.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the

Commissioner's decision.  *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in

substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the

presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is

not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Kovac argues that the RFC formulated by the ALJ is not supported by substantial evidence. He contends that, in determining Kovac's RFC, the ALJ erroneously relied upon the opinion of non-examining State agency psychologist J. Edd Bucklew, Ph.D.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Dr. Bucklew completed a Residual Functional Capacity Assessment based on a review of the record on July 13, 2016. (Tr. 63-64.) Dr. Bucklew expressed the opinion that Kovac had no restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. (Tr. 73.) He found that Kovac had moderate limitations in the following specific areas related to sustained concentration and persistence: ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and the ability to work in coordination with or in proximity to others without being distracted by them. (Tr. 63-64.) Dr. Bucklew also found that Kovac was moderately limited in the following areas of social interaction: ability to interact appropriately with the general public, and the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 64.) Dr. Bucklew concluded that Kovac retained the capacity to perform and persist with work-related tasks and make simple work-related decisions; but should avoid concentrated exposure to the general public. *Id.*

The ALJ assigned "significant weight" to Dr. Bucklew's opinions. (Tr. 25.) He acknowledged that Dr. Bucklew had not examined Kovac, and that additional medical evidence was received after Dr. Bucklew provided his opinions. *Id.* The ALJ stated that Dr. Bucklew's opinions were based upon a thorough review of the available medical and other evidence and his opinions are consistent with the new evidence. *Id.* For example, the ALJ stated that Dr. Bucklew's opinion that Kovac is moderately limited in his ability to carry out detailed instructions and maintain attention and concentration for extended periods is consistent with objective findings on examination regarding his memory, concentration, and thought processes. *Id.* He found that Dr. Bucklew's opinions regarding Kovac's social limitations is consistent

with the evidence documenting isolated findings of belligerent behavior and poor eye contact, but repeated observations of cooperative behavior without mood lability, irritability, or paranoia. *Id.* The ALJ stated that Dr. Bucklew's opinion that Kovac retains the ability to make simple work-related decisions is generally consistent with examining providers' findings regarding his judgment. *Id.* Finally, the ALJ noted that Dr. Bucklew, as a State agency psychological consultant, has specialized knowledge of the disability program that renders his opinion particularly informative. *Id.*

"State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416927(e)(2)(i). "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence," except for the determination of disability. 20 C.F.R. §§ 416.913a(b)(1), 416.927(e). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants or other program physicians or psychologists." 20 C.F.R. § 416.927(c).

It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). "Because a claimant's RFC is a medical question, an ALJ's

assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *Hensley*, 829 F.3d at 932 (RFC affirmed without medical opinion evidence); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same).

Here, the ALJ did not err in assigning significant weight to Dr. Bucklew's opinions in determining Kovac's RFC because the medical evidence of record supports Dr. Bucklew's opinions. Kovac received treatment for his mental impairments at Psych Care Consultants beginning in April 2015. On April 6, 2015, Kovac saw Jeffrey Pevnick, M.D., at Psych Care Consultants, with complaints of being "nervous and under lots of stress." (Tr. 325.) Kovac was in the war in Bosnia and came to the United States in 1998. *Id.* He used an interpreter to communicate. *Id.* Kovac reported he worked in a factory, but was undergoing surgery for a gastric ulcer and feared he would lose his job. *Id.* He was depressed regarding the surgery and anticipating the job loss. *Id.* Kovac reported experiencing nightmares and preoccupation about the war in Bosnia. *Id.* Upon examination, Kovac's mood was anxious and depressed and his judgment was mildly impaired, but he was well-groomed, cooperative, his affect was appropriate, his speech was normal, his thought process was logical and goal-directed, his thought content was intact, his cognition was normal, he was alert and oriented, his memory was intact, his intelligence was average, and his insight was fair. *Id.* Dr. Pevnick diagnosed Kovac

with PTSD and alcohol dependence, and prescribed Prozac[2] and Xanax.[3]   (Tr. 327.)   On May 6, 2015, Kovac reported feeling good and calm.   (Tr. 328.)   He still had some nightmares about war, but was sleeping better since starting medications.   *Id.*   Kovac was worried about his disabled daughter, whom he helped financially, because he anticipated losing his job after undergoing surgery.   *Id.*   Dr. Pevnick continued Kovac's medications.   (Tr. 329.)   On July 6, 2015, Dr. Pevnick indicated that Kovac was stable except for his worries about work.   (Tr. 330.)   Kovac's medications were helpful and he had fewer nightmares about the war.   *Id.*   He no longer needed Xanax.   *Id.*

Kovac presented to Arjun Bhattacharya, M.D., for an internal medicine examination upon the referral of the State agency.   (Tr. 415.)   Dr. Bhattacharya noted that it was "extremely difficult" to communicate with Kovac, even with the assistance of an interpreter.   *Id.*   Kovac was "somewhat belligerent and wanted immediate resolution of his problem, which is lack of health insurance."   *Id.*

Kovac saw F. Timothy Leonberger, Ph.D., on June 14, 2016, for a psychological evaluation upon the referral of the State agency.   (Tr. 426.)   Kovac reported that he was unable to work a full-time job because of his "nervousness."   *Id.*   He stated that he becomes very anxious if he stays "too long in one place."   *Id.*   Kovac indicated that he saw Dr. Pevnick for nightmares and anxiety only every six months because he does not have insurance.   (Tr. 428.)   He reported that he is less anxious than he had been previously, but still has some difficulty sleeping and experienced one to two nightmares a week.   *Id.*   Kovac also experienced feelings

---

[2]Prozac is indicated for the treatment of depression.   *See* WebMD, http://www.webmd.com/drugs (last visited March 10, 2020).

[3]Xanax is indicated for the treatment of anxiety and panic disorders.   *See* WebMD, http://www.webmd.com/drugs (last visited March 10, 2020).

of "mild paranoid ideations" such that someone is looking at him. (Tr. 429.) Kovac lived by himself and was able to clean house, do laundry, shop for groceries, cook, drive, and handle his own money. *Id.* For enjoyment, he liked to watch sports, walk, and spend time with his friends. *Id.* Kovac reported having one or two good friends that he meets for coffee. *Id.* Upon examination, Kovac's hygiene and grooming were good, he was "quite talkative," his speech was within normal limits, his thinking was logical and sequential with no evidence of a thought disorder, his mood appeared "mildly depressed," his affect was "somewhat anxious," his attention and concentration appeared "fair," and his insight into his current situation appeared to be "fair." *Id.* Dr. Leonberger diagnosed Kovac with PTSD; persistent depressive disorder, with pure dysthymic syndrome; and alcohol use disorder. (Tr. 429.) He found Kovac had no impairment in his activities of daily living; moderate impairment in social functioning; moderate impairment in concentration, persistence, and pace; and moderate deterioration in a work-like setting. *Id.* Dr. Leonberger did not believe Kovac was capable of handling funds in his own best interest. *Id.*

The evidence reviewed by Dr. Bucklew and discussed above supports his opinions. It reveals that, although Kovac experienced some symptoms of depression and PTSD, he was well-groomed, cooperative, appropriate, logical, and his memory was intact. (Tr. 325, 328, 428.) Kovac's symptoms improved with medication. (Tr. 328, 330, 428.)

On September 22, 2016, after Dr. Bucklew provided his opinions, Kovac presented to Farida Farzana, M.D., at Psych Care Consultants. (Tr. 438.) Kovac reported that he was nervous, depressed, and had difficulty sleeping. *Id.* He had not worked for about one-and-a-half years. *Id.* Upon examination, Kovac was disheveled, cooperative, restless, anxious, depressed, his affect was blunted, his speech was perseverating, his thought process was

circumstantial, he exhibited helplessness and low self-worth, his concentration was impaired, his judgment was mildly impaired, and his memory was intact. *Id.* Dr. Farzana diagnosed Kovac with major depressive disorder, single episode, moderate duration; and PTSD. (Tr. 440.) On November 3, 2016, Kovac was "hyper talkative and worried." (Tr. 433.) Dr. Farzana stated Kovac "is totally disabled, confused and cannot speak English." *Id.* He continued Kovac's medications. *Id.* On August 28, 2017, Kovac reported feeling "unwanted and sad." (Tr. 431.) He indicated that the company where he used to work had closed. *Id.* Upon examination, Kovac was disheveled, exhibited poor eye contact, his attitude was guarded, his mood was anxious and depressed, his affect was blunted and flat, his speech was perseverating, his thought process was tangential, he displayed helplessness and low self-worth, his concentration and memory were impaired, his judgment was moderately impaired, and his insight was poor. *Id.*

The ALJ accorded "little weight" to Dr. Farzana's opinion that Kovac was "totally disabled, confused, and cannot speak English." (Tr. 433.) The ALJ noted that the issue of whether an individual is disabled is an ultimate question reserved to the Commissioner. (Tr. 28.) He further noted that Dr. Farzana had only seen Kovac on two occasions when he provided this opinion, and that Kovac's inability to speak English was a vocational factor rather than a limitation arising from his mental impairment.

Finally, Kovac saw Asif Habib, M.D., at Mid-America Psychiatric Consultants on February 6, 2018, with complaints of a depressed mood for the past six months. (Tr. 630.) Kovac also reported anhedonia, poor energy, feeling tired, and poor concentration. *Id.* Upon examination, Kovac exhibited poor eye contact, was well-groomed, his hygiene was good, he was cooperative and friendly, exhibited normal psychomotor activity, was anxious, his speech was normal, his thought content was absent of suicidal or homicidal intent, his judgment was fair

to good, his insight was fair to good, and his intellect was average. (Tr. 631.) On March 20, 2018, Dr. Habib completed a Mental Medical Source Statement, in which he expressed the opinion Kovac had extreme limitations in his ability to ignore or avoid distractions; sustain an ordinary routine and regular attendance; follow one or two-step oral instructions to carry out a task; understand and learn terms, instructions, and procedures; work a full day without needing more than the allotted number or length of rest periods; distinguish between acceptable and unacceptable work performance; regulate emotions, control behavior, and maintain wellbeing in a work setting; ask simple questions or request help; maintain socially acceptable behavior; and respond appropriately to requests, criticisms, suggestions, correction, and challenges. (Tr. 659-61.) Dr. Habib found Kovac had marked limitations in his ability to initiate and complete tasks in a timely manner; use reason and judgment to make work-related decisions; function independently; and keep social interactions free of excessive irritability, argumentativeness, sensitivity, or suspiciousness. *Id.*

The ALJ accorded "little weight" to Dr. Habib's opinions. (Tr. 26.) He noted that the opinions were informed by only one treatment visit with Kovac and did not, therefore, provide a longitudinal perspective of his mental impairments throughout the alleged period of disability. (Tr. 27.) The ALJ also found that Dr. Habib's opinions were not consistent with his own findings on examination. *Id.* Specifically, the only abnormal findings noted by Dr. Habib were poor eye contact, depressed mood, and anxious affect. (Tr. 27, 631.) Dr. Habib found Kovac was well-groomed, his hygiene was good, he was cooperative and friendly, his speech was normal, and his judgment and insight were "fair to good." *Id.* The ALJ noted that these objective findings are not consistent with the presence of marked to extreme limitations in all aspects of basic mental work activities. (Tr. 27.)

The ALJ stated that Dr. Habib's opinion is also inconsistent with the overall evidence of record regarding Kovac's mental impairments. (Tr. 27.) The record contains some findings of a disheveled appearance, perseverative speech, and poor eye contact, but contains repeated findings of cooperative behavior and intact memory. *Id.* The ALJ indicated that Kovac reported significant symptom improvement with psychotropic medications. (Tr. 27, 328, 330.) Further, the ALJ found that Dr. Habib's opinion that Kovac is markedly limited in his ability to function independently is not consistent with Kovac's testimony. (Tr. 27.) For example, Kovac has resided alone throughout the period of alleged disability, and is able to independently drive, shop, and handle his finances. (Tr. 27-28, 205-12.)

The undersigned finds that the ALJ properly weighed the medical opinion evidence. It is true that this Court cannot consider the opinions of a non-examining, consultant physician standing alone to be substantial evidence. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (finding that if no other evidence supported an ALJ's RFC determination, the opinion of a non-examining consulting physician was not "considered substantial evidence in the face of the conflicting assessment of a treating physician."). The ALJ did not, however, solely rely on Dr. Bucklew's opinions to reach his conclusion. Dr. Bucklew's opinions were treated as part of the record, which as a whole provides substantial support for the ALJ's findings. When "[t]he state agency physicians' opinions were consistent with other medical evidence," the ALJ could "rely on them, in part, in formulating [a claimant's] RFC." *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). The ALJ considered and discussed at length other evidence when reaching his decision. The ALJ was entitled to assign weight to the opinion of Dr. Bucklew, as a highly qualified expert in disability determinations.

Additionally, there is no requirement that an RFC finding be supported by a specific medical opinion. *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *see also Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians."). Furthermore, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619-20.

Here, the ALJ properly considered Kovac's testimony in conjunction with the objective medical evidence and other factors in determining his RFC. The ALJ found that the objective medical evidence is not fully consistent with the degree of symptoms and limitations alleged by Kovac. (Tr. 30.) The ALJ acknowledged findings of depressed or anxious mood, and occasional instances of disheveled appearance and impaired concentration, but stated that Kovac has generally demonstrated cooperative behavior and intact memory and concentration. *Id.*

The ALJ also discussed Kovac's daily activities, which suggest that his symptoms were less severe than alleged. For example, the ALJ noted that Kovac testified that he drives, grocery shops, goes out alone, pays bills, regularly goes to a Bosnian café with friends to drink coffee and watch sports, goes to restaurants with friends, and would be open to a romantic relationship. (Tr. 21, 32, 205-12, 47, 428.) An ALJ may discount a claimant's subjective complaints if they are inconsistent with his activities of daily living. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013).

Based on the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. The ALJ limited Kovac to simple, routine, and repetitive tasks in a low-stress job that is not fast-paced; and limited Kovac to only occasional

interaction with the public and co-workers and supervisors.  (Tr. 23.)   The ALJ, therefore, incorporated significant restrictions due to Kovac's demonstrated difficulties in maintaining social functioning and in maintaining concentration, persistent, or pace.   The ALJ's opinion is supported by the opinion of Dr. Bucklew, and the findings on examination of Drs. Pevnick, Leonberger, and Habib.   It is also consistent with Kovac's testimony regarding his daily activities.   Kovac failed to demonstrate the presence of greater limitations than those found by the ALJ.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

s/*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of March, 2020.